IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal Action No. RDB-24-034 |
| RODNEY BURTON, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 10, 2025, a grand jury returned a Superseding Indictment charging Defendant Rodney Burton, also known as "Bitcoin Rodney," with eleven federal criminal counts relating to the so-called HyperFund cryptocurrency investment scheme. *See generally* (ECF No. 69). The Superseding Indictment alleges that Burton and his putative co-conspirators conspired to defraud individuals out of more than 1.8 billion dollars from June 2020 to May 2024, and that Burton personally received more than six hundred payments from investors worth more than nine million dollars. (*Id.*).

Burton was arrested in relation to those alleged offenses by federal law enforcement at Miami International Airport on January 3, 2024. When arrested, Burton was using a one-way ticket and preparing to board a flight to Dubai, United Arab Emirates. Just eleven days earlier, on December 22, 2023, Burton told a co-conspirator on a recorded telephone call that the federal government was investigating him, that he was moving to Dubai, and that, once there, he intended to continue to participate in the cryptocurrency business.

Burton has been in pretrial detention since his arrest on January 3, 2024. Twice previously this Court has found that Burton is a flight risk and merits pretrial detention under

§ 3142(e) of the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150. First, on January 29, 2024, United States Magistrate Judge Erin Aslan held a detention hearing pursuant to § 3142(f) and, considering the evidence then before her, found that Burton posed a serious risk of not appearing for future proceedings and ordered him detained pending trial. (ECF No. 14.) Specifically, she pointed to Burton's ability to access significant material assets with which he could abscond and a yacht to do the same. (*Id.*) She also noted the fact that he was arrested at the Miami airport with a one-way ticket to Dubai. (*Id.*) Second, pursuant to § 3145(b) of the Bail Reform Act, Burton sought de novo review of Judge Aslan's order from this Court on June 17, 2024. (ECF No. 27.) There, Burton sought release from detention to a High-Intensity Supervised Release Program ("HISP"). (*Id.*) The Court held a two-hour detention hearing on July 8, 2024. (ECF No. 32.) The Court denied Burton's motion and ordered him to remain in pretrial detention as "an extreme flight risk." (ECF No. 36.) Applying the factors set out in § 3142(g), the Court found that Burton's assets, the nature of the charges against him, the strength of the Government's evidence against him on those charges, and his history and characteristics made it so that no condition or set thereof could reasonably assure that Burton would not flee. (*Id.*)

Now pending is Burton's December 1, 2025, Motion to Reopen Detention Hearing and Impose Conditions of Release. (ECF No. 61.) Burton contends that his circumstances have changed since July 2024 such that he now no longer poses any flight risk. (ECF No. 68.) He asks to be released subject to a set of twelve conditions to be imposed by the Court. (*Id.*) This Court heard argument on the Motion on December 19, 2025. (ECF No. 77.) For the

2

reasons stated on the record at the hearing and explained further below, Burton's Motion (ECF No. 61) is DENIED.

## BACKGROUND

### I. Factual History

The Superseding Indictment (ECF No. 69), returned by a federal grand jury on December 10, 2025, alleges that Defendant Rodney Burton, also known as "Bitcoin Rodney," and his co-conspirators attempted to enrich themselves by promoting a cryptocurrency investment platform called HyperFund.[1] *See* (ECF No. 69 ¶ 6). The scheme is alleged to have lasted from June 2020 to May 2024. (*Id.*) The essential form of the scheme is that Burton and his co-conspirators promoted HyperFund on their social media and through radio. (*Id.* ¶ 17.) They promoted HyperFund, in part, by making the false claim that investors could earn returns of 0.5% to 1.0% daily, and consequently that they could potentially double, triple, or quadruple their money in a year or less. (*Id.* ¶ 17.) Burton allegedly told investors that their stake in HyperFund would result in the distribution of "substantial passive income based on revenues from various investment programs, including large-scale crypto[currency] mining operations." (*Id.* ¶ 18.) The Superseding Indictment claims that, in truth, HyperFund had no such mining operations. (*Id.*) Burton is also alleged to have promoted a referral system by which new investors would get a share of the investments of each additional member they recruited to HyperFund—a pyramid scheme. (*Id.* ¶ 20.)

---

[1] HyperFund has been variously known as HyperFund, HyperVerse, HyperNation, HyperTech, and HyperCapital. (ECF No. 69 ¶ 6.) This Opinion collectively refers to these related entities as HyperFund.

As regards the putative investment scheme, the Superseding Indictment charges that Burton and his co-conspirators told investors to use U.S. dollars to purchase a cryptocurrency called Tether,[2] and then to use that Tether to purchase "hyper units,"[3] which Burton and others claimed was a cryptocurrency internal to HyperFund. (*Id.* ¶¶ 21, 25.) The Superseding Indictment alleges that Burton told investors that one hyper unit was equivalent to one U.S. dollar and that, in fact, there was no parity between the two. (*Id.* ¶ 21.) The Superseding Indictment claims that by getting investors to buy hyper units, Burton was rewarded with substantial quantities of hyper units through the pyramid-style referral program. (*Id.* ¶ 22.)

The Superseding Indictment also alleges that Burton engaged in a different kind of fraud scheme. Instead of telling investors to buy Tether and then convert that Tether to hyper units, Burton encouraged them to circumvent HyperFund's multi-step process by depositing U.S. dollars directly into his bank accounts. (*Id.* ¶ 26.) Burton allegedly told these individuals that he would then transfer an equivalent value of hyper units to their HyperFund accounts. (*Id.*) Additionally, it is alleged that Burton told individuals to make the payments to his limited liability companies and to attribute them as being for consulting and training services, not for exchanging U.S. dollars to cryptocurrency. (*Id.* ¶ 27.) The Superseding Indictment claims that Burton received more than six hundred such payments totaling more than nine million dollars,

---

[2] Tether, more commonly known by its currency code USDT, is a cryptocurrency "stablecoin" with a value pegged to the value of the U.S. dollar. Its purpose is to facilitate the use of fiat currencies, like the U.S. dollar, in a digital manner. *See generally Why Use Tether?*, Tether, tether.to./en/why-tether (last visited Dec. 22, 2025).

[3] The Superseding Indictment alleges that "hyper units" were also called "HU" and "HyperUSD." (ECF No. 69 ¶ 21.)

including one wire transfer of $400,000 made by an investor on February 10, 2022. (*Id.* ¶¶ 31, 37.)

## II. Procedural History

On December 29, 2024, federal law enforcement filed a two-count sealed complaint against Burton, alleging that he (1) operated an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 and (2) conspired to do the same in violation of 18 U.S.C. § 371. (ECF No. 1.) U.S. Magistrate Judge Charles D. Austin issued an arrest warrant based on the complaint. (ECF No. 2.) Pursuant to the warrant, federal law enforcement arrested Burton on January 3, 2024, at the Miami International Airport. *United States v. Burton*, RDB-24-034, 2024 WL 3346882, at *1 (D. Md. July 9, 2024). Burton was arrested while using a one-way ticket and preparing to board a flight to Dubai, United Arab Emirates. *Id.* Upon his arrest, the United States District Court for the Southern District of Florida held an initial appearance for Burton, during which he was ordered detained until he could have a hearing in this Court. *Id.*

On January 25, 2024, Burton had his initial appearance in this Court before U.S. Magistrate Judge A. David Copperthite. (ECF No. 6.) On January 29, 2024, Burton had a detention hearing before U.S. Magistrate Judge Erin Aslan. (ECF No. 13.) Judge Aslan ordered Burton detained pending trial, finding that Burton posed a "serious risk" of not appearing for future proceedings. (ECF No. 14.) Specifically, she found that Burton had access to a "significant amount of assets"; the Government's evidence against him was strong; and that Burton was arrested at an international airport preparing to use a one-way ticket to Dubai. (*Id.*)

On February 7, 2024, a federal grand jury for the District of Maryland returned an indictment charging Burton with two counts: one count of conspiracy to operate an unlicensed

5

money transmitting business in violation of 18 U.S.C. § 371; and one count of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. (ECF No. 16.)

On June 17, 2024, while still in pretrial detention, Burton filed a Motion for Review of Detention Order under 18 U.S.C. § 3145(b), which gives persons ordered detained by federal magistrate judges the right to have their detention order reviewed de novo by a federal district judge. (ECF No. 27.) This Court held a hearing on the Motion on July 8, 2024. (ECF No. 32.) The Court issued a Memorandum Order denying the Motion on July 9, 2024. (ECF No. 36.) In the Order, the Court found that Burton "pose[d] an extreme flight risk" because he had made a recorded telephone call in December 2023 in which he told a co-conspirator that he was moving to Dubai and intending to continue to participate in cryptocurrency there even if individuals were "hurt" by the scheme. *Burton*, 2024 WL 3346882, at *2. He had noted on the call that the "feds" were investigating him and that "it's legal to do crypto" in Dubai. *Id.* The Court found that this telephone call, combined with the nature of his arrest—in an international airport preparing to board for Dubai on a one-way ticket—and Burton's financial resources at the time, made him a "severe flight risk." *Id.* (citing 18 U.S.C. § 3142(g)).

As further reason to order Burton detained, the Court's Order noted that (1) he has a prior conviction for conspiracy to contribute cocaine under 21 U.S.C. § 846;  (2) the nature and circumstances of his alleged offenses in this case are serious, involving an almost two billion dollar cryptocurrency fraud scheme, along with an allegation that Burton himself received more than six hundred individual payments worth more than nine million dollars; and (3) the weight of the evidence against Burton in this case is strong. *Id.* (citing 18 U.S.C. § 3142(g)). Accordingly, the Court denied Burton's Motion for Review of Detention Order and

6

ordered him detained "pending trial or further order of this Court." *Id.* at *3. Over the next year and a half, from July 2024 to December 2025, this Court granted four consent motions to exclude time under the Speedy Trial Act, 18 U.S.C. § 3161. *See* (ECF Nos. 39, 53, 57, 60).

On December 1, 2025, Burton filed a Motion to Reopen Detention Hearing and Impose Conditions of Release (ECF No. 61) pursuant to § 3142(f)(2) of the Bail Reform Act, which provides that a detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."[4] 18 U.S.C. § 3142(f)(2).

On December 9, 2025, Burton filed an Amended Memorandum of Law and a corresponding Motion for Leave to file excess pages. (ECF Nos. 68, 67.) On the same day, the Government filed a paperless Notice of Hearing informing Burton that he will have a detention hearing on December 19, 2025.

On December 10, 2025, a grand jury returned the operative Superseding Indictment, which includes eleven counts. (ECF No. 69.) Specifically, Burton is charged with: Count I: conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; Counts II and III: wire

---

[4] On December 3, 2025, the Government submitted a Motion to Set Briefing Schedule (ECF No. 63), which this Court granted by Order on December 4, 2025. (ECF No. 64.) That Order gave the Government until December 15, 2025, to file a Response to the Motion to Reopen Detention Hearing. (Id.) On December 4, 2025, Burton filed a Motion for Reconsideration of the Order granting the briefing schedule on this matter. (ECF No. 65.) The Court denied the Motion for Reconsideration by Memorandum Order on December 5, 2025. (ECF No. 66.)

fraud, in violation of *id.* § 1343; Counts IV–X: money laundering, in violation of *id.* § 1957 and § 2; and Count XI: Operating an unlicensed money transmitting business, in violation of *id.* § 1960 and § 2. *See* (ECF No. 69). On December 15, 2025, the Government filed its Response in Opposition to Burton's Motion to Reopen. (ECF No. 72.) Burton filed his Reply on December 18, 2025. (ECF No. 74.) Pursuant to § 3142(f), the Court held a hearing on the Motion on December 19, 2025. (ECF No. 77.) This matter is ripe for review.

## STANDARD OF REVIEW

Section 3142 of the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, gives federal district courts four options for the pretrial detention or release of a person charged with a federal crime and awaiting trial. A court can order that the person be (1) released on personal recognizance or an unsecured appearance bond; (2) released conditionally; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a)(1)–(4). Under this scheme, "liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Therefore, a court should grant conditional release unless "the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions will 'reasonably assure [the presence of the defendant at future court proceedings and] the safety of any other person and the community.'" *Id.* at 741 (quoting 18 U.S.C. § 3142(f)(2)).

Nevertheless, "if . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. §3142(e). A court considers the following factors in making its

8

determination about the sufficiency of conditions on release: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person by the community posed by the defendant's release." *Id.* § 3142(g).

Finally, even if a district court finds that pretrial detention is necessary under the Bail Reform Act, a detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the [previous] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.* § 3142(f)(2).

## ANALYSIS

Pursuant to § 3142 of the Bail Reform Act, Burton seeks to be released from pretrial detention and granted conditional release. (ECF No. 68 at 8.) Burton argues that the Bail Reform Act prefers pretrial release over pretrial detention, and that § 3142 in particular requires federal district courts to release persons charged with federal crimes pending trial *unless* the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* (*id.*); 18 U.S.C. § 3142(e)(1).

Reopening a detention hearing requires a judge to find that "information exists that was not known to the movant at the time of the [previous] hearing and that has a material bearing on the issue whether [conditions of release would serve their purposes]." *Id.* § 3142(g). Burton argues that there are now numerous conditions (he lists twelve) which would assure

9

his appearance at future proceedings as well as the safety of any other person and the community. (*Id.* at 8–10.) He further argues that, since this Court's detention order on July 9, 2024, four new pieces of information have come to light which have material bearing on the issue of detention and about which he did not know in July 2024. (*Id.* at 8; ECF No. 74 at 2.) He claims that these developments allow the Court to reopen his detention hearing under the Bail Reform Act and that the statute's detention factors in § 3142(g) now favor his conditional release. (ECF No. 68 at 8, 28–61.)

First, Burton says his financial status has diminished significantly such that he is no longer a flight risk. (*Id.*) Second, he argues that the substantial passage of time from his January 3, 2024, arrest and July 9, 2024, detention order means that Burton is now not a flight risk because, if he were to accept the Government's offered plea deal, he would serve little extra time in prison. (*Id.* at 9.) To be clear, the plea offer to which Burton refers in his Motion to Reopen was based on the original indictment (ECF No. 16). Third, Burton states that the current presidential administration's enforcement of cryptocurrency is drastically different from that of the previous administration. (*Id.* at 9–10.) He points to an April 7, 2025, memorandum from Deputy Attorney General Todd Blanche, which stated that the Department of Justice would "'no longer pursue litigation of enforcement actions that have the effect of superimposing regulatory frameworks on digital assets while [regulators] do this work outside the punitive criminal justice framework.'" (*Id.* at 9 (quoting the Blanche Memo).) Burton states that DOJ has dismissed or partially dismissed five cases like Burton's because of the Blanche Memo, and that Burton's is the same as those dismissed cases. (*Id.*) He argues that he likely would not have been prosecuted for operating an unlicensed money transmitting

10

business, *see* 18 U.S.C. § 1960, under the current administration, and so his case should be dismissed. (*Id.*) Burton's fourth and final material development is the Superseding Indictment itself (ECF No. 69), which a grand jury returned on December 10, 2025, nine days after he filed his Motion to Reopen Detention Hearing. (ECF No. 74 at 2.)

As the Court noted at the December 19, 2025, Motions Hearing (ECF No. 77), Burton's second- and third-proffered material developments hold no water. Each is mooted by the Superseding Indictment (ECF No. 69).[5] Burton's first- and fourth-proffered material developments rise and fall together. To be sure, the Superseding Indictment (ECF No. 69) is, by its very terms, new "information . . . that was not known" to Burton at the July 2024 detention hearing and which has "a material bearing" on the question of conditional release. *See* 18 U.S.C. §3142(f)(2). Nevertheless, pursuant to the factors in § 3142(g), the Government has presented clear and convincing evidence that Burton remains a substantial flight risk, that no set of conditions could assure his presence at future proceedings, and that must remain in detention pending trial.

---

[5] Burton's argument about prison time was, as noted above, based on the original two-count indictment which focused solely on operating an unlicensed money transmitting business and conspiring to do the same, in violation of 18 U.S.C. § 1960 and § 371. (ECF No. 16.) The statutory maximum for those crimes is five years. (ECF No. 68 at 19.) The Superseding Indictment, however, charges wire fraud, wire fraud conspiracy, money laundering, and operating an unlicensed money transmitting business. *See generally* (ECF No. 69). If Burton is convicted of those counts, he would face a statutory maximum of thirty-five years. (ECF No. 72 at 15.) Put simply, he is no less a flight risk because of the time he has already spent in pretrial detention. If anything, Burton has a greater motive to flee this Court's jurisdiction, as the statutory maximum sentence under the Superseding Indictment is now seven-times greater than it was under the original two-count indictment.

Likewise, Burton's argument about the current presidential administration's cryptocurrency enforcement prerogatives is without merit by the simple fact that a grand jury returned the Superseding Indictment on December 10, 2025. (ECF No. 69.) The Superseding Indictment comes eight months after the Deputy Attorney General's memorandum.

Burton's brief in support of his Motion to Reopen Detention Hearing is seventy-one pages long[6] and expends a significant portion of those pages (eighteen, to be exact) arguing for pretrial release based on possible prison time and the Deputy Attorney General's memorandum. *See* (ECF No. 68 at 18–35). Burton spends only three pages on his diminished finances, however, and makes only high-level assertions unsupported by any factual development. (*Id.* at 15–18.) He particularly claims that no longer has a yacht, which Judge Aslan had stated in her January 29, 2024, detention order could have provided a means to abscond from the United States, and that any luxury cars and properties he owned were seized by the Government or so encumbered as to provide no liquidity. (*Id.* at 16.) At oral argument, he reiterated those assertions, and argued the Government has never proven that Burton has any remaining cryptocurrency wealth, despite the Government's access to Burton's bank records and phones for the past two years. (*Id.*; ECF No. 77.) Burton also asserted that his lack of a passport makes him not a flight risk. (ECF No. 68 at 17–18.; ECF No. 77.)

In its Response (ECF No. 72), the Government contends that Burton's lack of a passport does not mitigate the risk that he will flee because he could flee to Mexico or Canada and, from there, Dubai or any other place outside of the Court's jurisdiction. (ECF No. 72 at 8–9.) It further argues that Burton's liquidation of the yacht for $850,000 made him more— not less—of a flight risk because it gave him cash with which to abscond and that Burton offers no evidence that he sold the yacht at a loss. (*Id.* at 9–10.) On the contrary, the Government points to the yacht's bill of sale and Burton's bank records, which show that he

---

[6] Burton filed a contemporaneous Motion for Leave to File Excess Pages (ECF No. 67) with his Memorandum of Law. That Motion is GRANTED.

purchased the yacht in the first instance for $1,417,000 with cash from his bank account. (*Id.* at 10.) Thus, the Government concludes that Burton's sale of the yacht for $850,000 put that amount of money in his pocket. (*Id.*)

The Government continues by pointing to Burton's luxury cars and properties. (*Id.* at 10–11.) While Burton claims that his cars and properties were either seized or so encumbered as to be illiquid, the Government responds by noting that the only asset it has seized is an unmanifested Rolls Royce Cullinan, which Customs and Border Patrol picked up in Savannah, Georgia as it was being loaded on a container ship headed for Dubai in May 2024, some months after Burton was ordered detained by Judge Aslan. (*Id.* at 10.) The Government asserts that Burton's bank records and social media accounts indicate that he owned a Lamborghini, another Rolls Royce, a Porsche, and a Jeep Apocalypse, none of which the Government has seized. (*Id.* at 11.) To the extent that Burton has liquidated those cars, the Government offers, he is more, not less, liquid. (*Id.*) In addition to the cars, the Government asserts that Burton has, and the Government has not seized, a $6.4 million house in Miami, Florida, and three additional properties in Maryland, one of which is a waterfront penthouse apartment in Oxon Hill, Maryland. (*Id.*; ECF No. 77.) Therefore, the Government argues Burton has even more of a financial incentive to flee now than he did in May or June 2024. (ECF No. 72 at 11.)

Further, the Government asserts that Burton's U.S. bank records show transfers of money from his U.S. bank accounts to two Dubai bank accounts, one registered to "Rodney

13

Burton" and the other registered to "RBJ Consulting." (*Id.* at 11–12.) These transfers were made in May and November 2022.[7] (*Id.* at 12.)

Finally, the Government addresses Burton's argument that no one has uncovered any latent cryptocurrency wealth despite having access to his bank accounts and phone for more than two years, and that this must mean that no such cryptocurrency wealth exists. (*Id.* (citing ECF No. 62 at 17).) It responds by citing Burton's brand and self-given public moniker, "Bitcoin Rodney." (*Id.*) The Government also cites messages Burton has sent from his detainee tablet at the Chesapeake Detention Facility.[8] (*Id.* at 12–13.) For example, on November 12, 2024, Burton messaged numerous people on his tablet celebrating that the price of one Bitcoin had risen to $90,000.[9] (*Id.* at 12.) On December 5, 2024, he sent similar texts that Bitcoin had hit a price of $101,000. (*Id.* at 13.) Additionally, on December 7, 2024, he sent messages asking a friend to keep him updated on the prices of other cryptocurrencies, including XRP, CTC, and Shiba Coin, among others. (*Id.*) The Government offers these messages as evidence that Burton has continued to own and control cryptocurrency wallets[10] which are not visible to the Government. (*Id.*) As the Government states in its brief, "although

---

[7] At the December 19, 2025, hearing, the Government pointed out that it cannot determine the amount of money in those Emirati bank accounts. (ECF No. 77.)

[8] The facility has electronic tablets to use to exchange texts with the outside world. They are warned law enforcement may see their messages.

[9] As of December 22, 2025, the current price of one Bitcoin is $89,654.17. Bitcoin reached its all-time-high price of $126,198.07 on October 6, 2025.

[10] Cryptocurrency is commonly held in what is called a "wallet," which is a digital or physical device that contains a person's cryptocurrency passwords, called "keys." *See, e.g, Cryptocurrency Wallet*, Corp. Fin. Inst., https://corporatefinanceinstitute.com/resources/cryptocurrency/cryptocurrency-wallet/#:~:text=Time%205%20minutes-,What%20is%20a%20Cryptocurrency%20Wallet?,rather%20remains%20on%20the%20blockchain (last visited Dec. 22, 2025).

14

[it] knows that Burton has substantial cryptocurrency assets based on his own statements, [it] cannot effectively locate, monitor, or restrain how those cryptocurrency assets are used." (*Id.*) Separate from the Government's arguments as to Burton's finances, it argues that his "incentive to flee is greater than ever" because of the Superseding Indictment, which could impose maximum jail time of thirty-five years. (*Id.* at 14–16.)

As stated on the record, the Government's meticulous, clear, and convincing evidence of Burton's assets, coupled with the significantly-greater prison sentence he could face if convicted under the Superseding Indictment (ECF No. 69), cause the Court to conclude that there are no conditions of release that would reasonably assure Burton's future appearances in this case. Just as this Court found on July 9, 2024, Burton remains "an extreme flight risk" under the § 3142(g) factors. *Burton*, 2024 WL 3346882, at *2. His history and characteristics, including: (1) a prior conviction for conspiracy to distribute cocaine under 21 U.S.C. § 846; (2) his arrest with a one-way ticket to Dubai at the Miami International Airport; (3) the December 22, 2023, recorded telephone call in which Burton stated that he was moving to Dubai because he was being investigated by the federal government; (4) the attempt to remove a Rolls Royce Cullinan to Dubai on a container ship without proper manifestation; and (5) his November and December 2024 tablet messages celebrating the increased price of Bitcoin, all demonstrate a severe flight risk. *See* 18 U.S.C. 3142(g)(3). Moreover, the nature of the offenses charged are quite serious, alleging wire fraud, wire fraud conspiracy, money laundering, and operating an unlicensed money transmitting business to the tune of nearly two billion dollars, defrauding perhaps thousands of individuals. *See id.* § 3142(g)(1). The weight of the Government's evidence against Burton, taken from the allegations in the Superseding Indictment and the

15

Government's argument at the December 19, 2025, motions hearing, bolster the finding that no conditions of release would reasonably assure that Burton would not flee. *See id.* § 3142(g)(2). In sum, the § 3142(g) factors clearly weigh in favor of Burton's continued pretrial detention.

## CONCLUSION

For the reasons stated above, Burton's Motion to Reopen Detention Hearing and Impose Conditions of Release (ECF No. 61) is DENIED.

A separate Order follows.

Date: December 22, 2025

/s/
Richard D. Bennett
United States Senior District Judge